IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PHILLIP MIZRACH,                    *

    Plaintiff,                      *

        v.                        *        CIVIL NO.: WDQ-11-1153

UNITED STATES OF AMERICA,           *

    Defendant.                      *

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Phillip Mizrach, *pro se* and as personal representative of
the estate of Abraham I. Kurland, sued the United States for
medical malpractice.  On February 7, 2012, the Court granted the
Government's motion to dismiss, and denied Mizrach's motion to
reopen an earlier lawsuit and consolidate it with this case.
For the following reasons, the Court will deny Mizrach's motion
to alter the judgment.

I. Background

On April 14, 2003, Kurland was admitted to the Baltimore
Veterans Affairs Medical Center (the "VA Hospital") for a
urinary tract infection and gastrointestinal problems.  Compl. ¶
12.  On May 3, 2003, after "suffering in pain and moaning for
hours," Kurland was found dead with a "copious, thin brown/red"
discharge in his throat.  Compl. ¶ 12.  The source of his

abdominal problems was never identified or treated.  Compl. ¶
12.

On May 2, 2005, Mary Kurland, Kurland's sister and personal
representative of his estate, filed an administrative tort claim
with the Department of Veterans Affairs (the "VA"), alleging
that Kurland's medical providers had negligently caused his
death.  ECF No. 10, Ex. 1.  On February 7, 2008, the VA issued
its final decision denying the claim.  *See* Compl., Ex. A.  The
notice said:

> [i]f you are dissatisfied with the action taken on
> your claim, you may file suit in accordance with the
> Federal Tort Claims Act, sections 1346(b) and 2671-
> 2680, title 28, United States Code, which provides, in
> effect, that a tort claim which is administratively
> denied may be presented to a Federal district court
> for judicial consideration. Such a suit must be
> initiated, however, within 6 months after the date of
> the mailing of this notice of final denial as shown by
> the date of this letter (section 2401(b), title 28,
> United States Code). If you decide to initiate such a
> suit, you are further advised that the proper party
> defendant would be the United States, not VA.

*Id.*

On August 5, 2008, Kurland's nephew Mizrach[1] filed a
survival action against the Government in this Court, alleging
that the VA Hospital staff was negligent in treating Kurland.
*See* ECF No. 1, *Mizrach v. United States*, Case No. AMD-08-2030

---

[1] Mary Kurland died on October 31, 2006, and Mizrach became
personal representative of Abraham Kurland's estate.  Compl. ¶¶
4-5.

2

[hereinafter *Mizrach I*].  The Government moved to dismiss,
arguing that Mizrach's lawsuit was premature because he had not
presented his claims to Maryland's Health Claims Alternative
Dispute Resolution Office (the "Maryland ADR Office"), or filed
an expert's certificate that Kurland's medical providers had
departed from the standard of care.[2]  ECF No. 5-1, at 1-2, Case
No. AMD-08-2030.  On February 17, 2009, then District Judge
Andre Davis denied Mizrach's motion to stay the proceedings, and
dismissed the case without prejudice because of Mizrach's
failure to exhaust his remedies.  ECF Nos. 20-21, Case No. AMD-
08-2030.  Judge Davis denied Mizrach's motion to alter the
judgment, and the Fourth Circuit affirmed in a judgment that
took effect on February 3, 2010.[3]

On February 25, 2010, Mizrach filed a claim with the
Maryland ADR Office.  Compl. ¶ 1.  On May 25, 2010, he filed an
expert's certificate stating that Kurland's medical providers
had failed to comply with the appropriate standard of care.
Compl., Ex. C ¶ 2.

On June 28, 2010, the Supreme Court denied Mizrach's

---

[2] These steps are required under Maryland's Health Care
Malpractice Claims Act, Md. Code Ann., Cts. & Jud. Proc. §§ 3-
2A-01 *et seq.*

[3] ECF No. 23, Case No. AMD-08-2030; *Mizrach ex rel. Estate of
Kurland v. United States*, 334 F. App'x 571, 572 (4th Cir. Oct.
23, 2009) (per curiam); ECF No. 30, Case No. AMD-08-2030 (Fourth
Circuit mandate stating that the October 23, 2009 judgment took
effect on February 3, 2010).

petition for certiorari in *Mizrach I*.  *Mizrach v. United States*, 130 S. Ct. 3516 (2010).

On March 1, 2011, Mizrach waived arbitration in the state proceeding.  Compl. ¶ 1.  On March 2, 2011, the Maryland ADR Office issued an order allowing Mizrach to file his claim in federal court.  Compl., Ex. D.[4]

On May 2, 2011, Mizrach brought this survival action, alleging that Kurland's medical providers were negligent.  On August 22, 2011, the Government moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  ECF No. 10.  On September 27, 2011, Mizrach opposed the motion, and moved to reopen *Mizrach I* and consolidate it with this case. ECF No. 14.

On February 7, 2012, the Court granted the Government's motion to dismiss.  ECF No. 29.  The Court ruled that it lacked subject matter jurisdiction because the Federal Tort Claims Act (the "FTCA") required Mizrach to file his lawsuit within six months after the VA denied his administrative claim.  ECF No. 28 at 7 (*citing* 28 U.S.C. § 2401(b)).  Mizrach had waited more than three years.  *Id.* at 8.  The Court found that no equitable principles provided for tolling the statute of limitations.  *Id.*

---

[4] Under Maryland law, Mizrach had 60 days to file a complaint and a copy of his arbitration waiver.  *See* Md. Code Ann., Cts & Jud. Proc. § 3-2A-06B(f)(1).

at 13.

The Court also denied Mizrach's motion to reopen and consolidate *Mizrach I* with this case because he had not shown cause to reopen *Mizrach I*. ECF No. 29; ECF No. 28 at 14-15. He had not established that the Government had committed fraud, nor had he timely moved to reopen under Fed. R. Civ. P. 60(b). *Id.* at 15-17. Mizrach had also failed to show that Fed. R. Civ. P. 60(d) applied.[5]

On February 15, 2012, Mizrach moved to alter the judgment under Fed. R. Civ. P. 59(e). ECF No. 30. On March 12, 2012, the Government opposed the motion.[6] On March 29, 2012, Mizrach filed a reply. ECF No. 34.

---

[5] *Id.* at 17-18. Section (d) provides that Rule 60 does not limit a court's power to

(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;

(2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or

(3) set aside a judgment for fraud on the court.

Mizrach was not a defendant who had failed to receive notice of a lien on property, *see* Fed. R. Civ. P. 60(d)(2), nor had he shown fraud on the Court, *see id.* at (3). ECF No. 28 at 18. To the extent that Mizrach intended his request for relief to be an independent action in equity, he had failed to show a "grave miscarriage of justice." *Id.* at 17 (*citing United States v. Beggerly*, 524 U.S. 38, 47 (1998)).

[6] ECF No. 33. The motion was timely. *See* ECF No. 32 (order extending time to file opposition).

II. Analysis

  A. Standard of Review

    Under Rule 59(e), the Court may grant a motion to alter or
amend the judgment to: (1) accommodate an intervening change in
controlling law; (2) account for new evidence previously
unavailable; or (3) correct a clear error of law or prevent
manifest injustice. *Gagliano v. Reliance Standard Life Ins.
Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008). Rule 59(e) may not
be used to reargue points that could have been made before
judgment was entered. *Exxon Shipping Co. v. Baker*, 554 U.S.
471, 485 n.5 (2008); *Hill v. Braxton*, 277 F.3d 701, 708 (4th
Cir. 2002).

    A party's disagreement with the Court's decision is not a
basis for granting a Rule 59(e) motion. *Hutchinson v. Staton*,
994 F.2d 1076, 1082 (4th Cir. 1993). Indeed, "[w]here a motion
does not raise new arguments, but merely urges the [C]ourt to
'change its mind,' relief is not authorized."[7]

  B. Mizrach's Motion

    Mizrach argues that: (1) the Court failed to consider the
"deemed denied" provision of the FTCA, (2) he satisfied the
statute of limitations because he filed a claim within two years
after it accrued, (3) the VA attorneys misled him about how much

---

[7] *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 470 (D. Md. 2002);
*see also Erskine v. Bd. of Educ.*, 207 F. Supp. 2d 407, 408 (D.
Md. 2002).

time he had to file his lawsuit, and (4) "the Court has
discretion to grant [his] [m]otion to [r]eopen and [c]onsolidate
based on changes in the law that was relied on and cited by [the
Government] in *Mizrach I*." ECF No. 30-1.

1. "Deemed Denied" Doctrine

Mizrach argues that his lawsuit was timely filed under the
"deemed denied" doctrine because the VA took more than six
months to deny his claim. ECF No. 30-1 at 3-4. He argues that
a claim may be deemed denied if the relevant federal agency has
not issued a decision within six months, and "a [lawsuit] may be
filed at any time" thereafter, regardless of "[t]he fact that an
administrative denial [is] eventually made." *Id*. He contends
that the Court failed to consider several cases in support of
this doctrine, including *Zander v. United States*, 786 F. Supp.
2d 880 (D. Md. 2011).[8]

The Government argues that Mizrach's reliance on *Zander* is
misplaced because (1) the case is distinguishable, and (2) the
Court in a subsequent proceeding dismissed Zander's claims for
failing to comply with the FTCA's six-month limitations period.
*See* ECF No. 33 at 5.

The FTCA's limitations provision states that a tort claim

---

[8] ECF No. 30-1 at 4. Mizrach also cites *Parker v. United States*,
935 F.2d 176, 178 (9th Cir. 1991), *McCallister v. United States*,
925 F. 2d 841, 843 (5th Cir. 1991) (per curiam), and *Taumby v.
United States*, 919 F.2d 69, 70 (8th Cir. 1990). *Id*.

against the Government "shall be forever barred unless . . .
action is begun within six months" after the relevant federal
agency denies the plaintiff's administrative claim.  28 U.S.C. §
2401(b).  A different section provides that an FTCA action is
barred unless "the appropriate Federal agency" has "finally
denied" the administrative claim "in writing . . . by certified
or registered mail," and

> [t]he failure of an agency to make a final disposition
> of a claim within six months after it is filed shall,
> at the option of the claimant any time thereafter, be
> deemed a final denial of the claim for purposes of
> this section.

28 U.S.C. § 2675(a).

Although the Fourth Circuit has not addressed the interplay
of these two provisions, many courts have held that § 2401(b)'s
six-month statute of limitations is tolled only until the agency
issues a final denial.[9]  Under this view, constructive denial
under § 2675(a) "does not occur until the claimant exercises the
option to deem the claim to have been denied." *Conn*, 867 F.2d

---

[9] *See Lehman v. United States*, 154 F.3d 1010, 1012-15 (9th Cir.
1998); *Pascale v. United States*, 998 F.2d 186, 192-93 (3d Cir.
1993); *Conn v. United States*, 867 F.2d 916, 920 (6th Cir. 1989);
*Boyd v. United States*, 482 F. Supp. 1126, 1129-30 (W.D. Pa.
1980); *Mack v. United States*, 414 F. Supp. 504, 509 (E.D. Mich.
1976).  Other courts have held that the statute of limitations
is tolled only for some "reasonable time" after six months has
elapsed without an agency denial of the administrative claim.
*See, e.g., Miller v. United States*, 741 F.2d 148, 150 (7th Cir.
1984) ("Since the [agency] never finally denied plaintiff's
[claim], she could exercise this [constructive denial] option at
any reasonable time after [six months had elapsed].").

at 920-21. "The claimant may exercise the option at any time after the six months has expired [from the time he filed his administrative claim] and *there has been no denial*." *Id.* at 921 (emphasis added).

> Thus, if an agency fails to issue a notice of final denial within six months of receiving an administrative claim, the claimant may either deem it denied and file suit in district court at any time *prior to final agency action* or the claimant may await final agency action and file suit within six months thereafter

*Lehman*, 154 F.3d at 1013 (emphasis added) (internal quotation marks omitted). "[T]he option to 'deem' a claim constructively denied evaporates once the agency actually denies the claim," because "[t]here is nothing to deem once the agency formally acts." *Ellison v. United States*, 531 F.3d 359, 363 (6th Cir. 2008).

Mizrach argues that § 2401(b) simply does not apply when an agency takes more than six months to deny an administrative claim.[10] Were that true, a claimant's cause of action would be preserved indefinitely, contrary to the purpose of the FTCA. When drafting § 2675(a), Congress stated that it sought to encourage the prompt resolution of claims:

> [I]f the agency fails to act in 6 months, the claimant may at his option elect to regard this inaction as a

---

[10] *See* ECF No. 30-1 ("[A] case may be filed at any time after a claim is deemed denied," and "[t]he fact that an administrative denial [i]s eventually made is not relevant" because "the bell having been rung . . . cannot thereafter be unrung").

> final denial *and proceed to file suit*. It is obvious
> that there will be some difficult tort claims that
> cannot be processed and evaluated in this 6-month
> period. The great bulk of them, however, should be
> ready for decision within this period. In some cases
> where the agency does not reach a decision in 6
> months, the claimant may feel that the agency is
> sincerely seeking to reach a fair decision. Under
> such circumstances, the claimant might wish not to
> break off negotiations and file suit. Therefore, even
> though this 6-month period may prove insufficient in
> some instances, *the committee does not believe that
> this period ought to be enlarged to attempt to insure
> time for final decision on all claims.*

S. Rep. No. 1327, 89th Cong., 2d Sess., *reprinted in* 1966

U.S.C.C.A.N. 2515, 2518-19 (emphasis added). The prompt

resolution of claims was also the goal of the statute of

limitation in § 2401(b),[11] which the Court must consider when

interpreting § 2675(a).[12] "Nothing in the [FTCA] suggests, much

less says, that [Mizrach] can sidestep [the § 2401(b) statute of

limitations] simply by deeming [his] claim denied later than the

agency in truth did deny it." *Ellison*, 531 F.3d at 363.

None of the cases cited by Mizrach counsels this Court to

adopt his position. First, *Zander* did not address the

limitation period in § 2401(b); it merely found that § 2675(a)

---

[11] *See Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d
738, 741 (4th Cir. 1990) (the FTCA's statute of limitations
gives defendants and courts "the right to be free of stale
claims").

[12] When "interpreting a statute, it is a fundamental rule of
statutory construction that all parts of a statute must be read
together." *United States v. Penn*, 17 F.3d 70, 73 (4th Cir.
1994) (internal quotation marks omitted).

preempted Maryland's statute of repose. *See Zander*, 786 F. Supp. 2d at 886-87. In a later proceeding, the Court dismissed Zander's claims because she had not filed her lawsuit within six months of the Government's denial of her administrative claim. *Zander v. United States*, ---F. Supp. 2d---, 2012 WL 447392, at *8 (D. Md. Feb. 13, 2012). Second, the Ninth Circuit in *Parker* simply held that filing a lawsuit did not constitute a "final denial of the claim by the agency" for purposes of § 2401(b). *Parker*, 935 F.2d at 177. More recently, in *Lehman*, the Ninth Circuit made clear that § 2675(a) applies only so long as the relevant federal agency has not issued a denial. *See Lehman*, 154 F.3d at 1013. Finally, unlike Mizrach, the claimants in *McCallister* and *Taumby* had not received a denial by the relevant federal agency when they sued.[13]

In sum, Mizrach had the option of deeming his claim denied only until the VA issued a formal denial. *See, e.g.*, *Lehman*, 154 F.3d at 1013. Once the VA did so, on February 7, 2008, Mizrach had six months to file his lawsuit. *See id.* Because

---

[13] *See McCallister*, 925 F. 2d 841; *Taumby*, 919 F.2d 69; *Taumby v. United States*, 902 F.2d 1362, 1363 (8th Cir. 1990). In *Taumby*, the Government had denied the administrative claim but had failed to properly notify the claimant as required by § 2401(b). *Taumby*, 902 F.2d at 1363. Although *McCallister* did not involve an agency that had formally denied an administrative claim, the Fifth Circuit cited *Conn* with approval. *See McCallister*, 925 F.2d at 843-44 n.4 (*citing Conn*, 867 F.2d at 916, 920-21). As noted above, the Sixth Circuit in *Conn* held that a claimant can deem his claim constructively denied only so long as the agency has not issued a formal denial. *See Conn*, 867 F.2d at 920-21.

Mizrach sued on May 2, 2011--more than three years later--his lawsuit was untimely, and the Court properly dismissed his case for lack of subject matter jurisdiction. *See* ECF No. 28 at 8; ECF No. 29.

2. Two-Year Limitation in § 2401(b)

Mizrach argues alternatively that he complied with the FTCA's statute of limitations because he filed an administrative claim within two years after his cause of action accrued. *See* ECF No. 30-1 at 4-5. The Government counters that Mizrach has misinterpreted the filing requirements of § 2401(b). *See* ECF No. 33 at 5.

Section 2401(b) provides that

> [a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

Mizrach argues that "the word 'or' [between the timing requirements] is used in the statute with the clear meaning of an alternative time frame being allowed to file suit later if one has timely filed a written claim within two years after an action accrues." ECF No. 30-1 at 5.

Although § 2401(b) uses the phrase "or unless" to connect the two timing requirements, the Fourth Circuit has uniformly

interpreted the phrase to mean "and."[14]  Thus, § 2401(b) requires

a claimant to (1) file his claim with the relevant federal

agency within two years after the claim accrues, *and* (2) file

his lawsuit within six months after the agency denies that

claim.  *See Henderson*, 785 F.2d at 123.

To adopt Mizrach's interpretation "would effectively

eliminate *any* court deadline" because "claimants could wait as

long as they wished before presenting tort claims to agencies as

long as they filed the claim within six months of any denial,"

or "they could present their claims to agencies within two years

of accrual and then wait as long as they wished to file suit in

district court." *Ellison v. United States*, 531 F.3d 359, 362

(5th Cir. 2008) (emphasis in original).  "But no one doubts that

Congress meant to impose *some* time limitation on administrative

---

[14] *See Savage v. United States*, 966 F.2d 1444 (table), 1992 WL
122292, at *2 (4th Cir. 1992) ("To bring his FTCA suit,
Appellant had to meet two timeliness requirements.  First he had
to file his administrative claim within two years after it
accrued.  Second, he had to file the action in district court
within six months of the final administrative denial of his
claim."); *Henderson v. United States*, 785 F.2d 121, 123 (4th
Cir. 1986) (Section 2401 "provides that a claim must be
presented in writing to the appropriate federal agency within
two years after such claim accrues *and* that a civil action must
be commenced within six months after the final denial of the
claim by the agency.") (emphasis added and omitted).  *Accord
Schuler v. United States*, 628 F.2d 199, 201 (D.C. Cir. 1980)
("Though the section is not happily drafted, common sense and
the legislative history tell us that it requires the claimant
both to file the claim with the agency within two years after
accrual of the claim and then to file a complaint in the
District Court within six months after the agency denies the
claim.").

and court filings[.]"  *Id.* (emphasis in original).

Although Mizrach filed his administrative claim within two years after his cause of action accrued, he failed to sue within six months of the VA's final denial of that claim.  Accordingly, his lawsuit is untimely.

The Court is "not unmindful that a strict adherence to the requirements of the statute of limitations provision under the FTCA often works a substantial hardship on plaintiffs."  *Gould v. U.S. Dep't of Health and Human Servs.*, 905 F.2d 738, 747 (4th Cir. 1990).  But while the Court "recognize[s] the hardship resulting to [Mizrach] in this case, [it] ha[s] no choice but to apply the law as written."  *Id.*   Thus, the Court properly dismissed Mizrach's case for lack of subject matter jurisdiction.  *See* ECF No. 28 at 8; ECF No. 29.

    3. Equitable Estoppel

Mizrach renews his argument that the attorneys who drafted the VA's denial letter "ignored their duty not to mislead [him] into filing [his lawsuit] directly before complying with [the requirements] of the Maryland [Health Care Malpractice Claims Act]."  ECF No. 30-1 at 6; ECF No. 14-1 at 10-16.  He contends that the VA was obligated to inform him of the requirements of the Maryland statute, the VA's failure to do so was ethical misconduct, and the Government should be equitably estopped from opposing his motion to reopen and consolidate *Mizrach I* with

14

this case. *Id.* at 5-7.

The Government counters that equitable estoppel is only available where a government agent engages in "affirmative and egregious misconduct," which Mizrach has failed to establish. ECF No. 33 at 6.  The Government contends that Mizrach has not "point[ed] to any court holding that the notices issued by the [VA] [a]ttorneys must give guidance to potential [p]laintiffs on the particular substantive laws of the state in which the [p]laintiff could file suit."  ECF No. 33 at 7.

As the Court stated in its February 7, 2012 memorandum opinion,

> the Government had no duty to inform Mizrach of the requirements of Maryland's Health Care Malpractice Claims Act.  Federal regulations required only that, in denying an administrative claim, the VA inform a claimant of his right to file a lawsuit "in an appropriate U.S. District Court not later than 6 months after the date" of the denial.  28 C.F.R. § 14.9(a).  The VA did this. *See* Compl., Ex. A.

ECF No. 28 at 13.  The Court further noted that

> "a party must show affirmative misconduct by government agents" to estop the Government.[15]  This is a "rigorous" standard, which requires more than a showing that "a government agent misinformed [the party] of the proper method of filing a complaint."[16]

---

[15] *Austin v. Winter*, 286 F. App'x 31, 38 (4th Cir. 2008) (per curiam) (*citing Dawkins v. Witt*, 318 F.3d 606, 611 (4th Cir. 2003)).

[16] *Austin*, 286 F. App'x at 38.  *See also Dawkins*, 318 F.3d at 611 ("The Supreme Court has consistently denied efforts by litigants to estop the government from raising defenses based on claimants' failure to comply with governmental procedures due to

> Mizrach's allegation that the Government misinformed
> him of the prerequisites to filing suit is not "a
> proper basis for estoppel." *Austin*, 286 F. App'x at
> 38.

*Id.* at 12.

Mizrach has presented no grounds for revising the Court's February 7, 2012 dismissal order.  His citation to *Austin* supports the Court's order,[17] and *Zankel v. United States* is neither on point nor controlling precedent.[18]  Mizrach's mere disagreement with the Court's decision is not a basis for altering the judgment.  *See Hutchinson*, 994 F.2d at 1092.

4. Changes in Law

Finally, Mizrach argues that "the Court has discretion to grant [his] [m]otion to [r]eopen and [c]onsolidate based on changes in the law that was relied on and cited by [the Government] in *Mizrach I*."  ECF No. 30-1 at 7.  He contends that (1) the Government impermissibly relied on dictum in *Mayo-Parks v. United States*, 384 F. Supp. 2d 818 (D. Md. 2005), and (2) the

---

misinformation from government agents.").

[17] *See supra* notes 14 and 15, and accompanying text.

[18] *See* ECF No. 30-1 at 6-7.  In *Zankel*, the Second Circuit found that the district court had erred in dismissing an FTCA action for failure to properly serve the Government, in part because the Government had delayed "disclos[ing] the specific character of plaintiffs' defective service" in an "apparently "deliberate attempt to secure the demise of plaintiffs' claims through untimely service."  *Zankel*, 921 F.2d 432, 437-38 (2d Cir. 1990). The plaintiffs had not alleged that the Government's letter denying their administrative claims was misleading.  Regardless, Second Circuit case law is not binding on this Court.

Government made an argument about the Maryland statute of repose that was undermined by this Court's ruling in *Zander*.  ECF No. 30-1 at 7-8.

Mizrach has shown no change in law that entitles him to relief.  First, the Government in *Mizrach I* cited *Mayo-Parks* for the simple proposition that a plaintiff must comply with the requirements of the Maryland Health Care Malpractice Claims Act before bringing an FTCA action.[19]  Although another judge of this Court later concluded that part of *Mayo-Parks* was dictum,[20] the plaintiff must still comply with the Maryland statute as "a condition precedent to bringing a medical malpractice lawsuit in

---

[19] *See Mizrach I*, ECF No 5-1 at 4 (citing *Mayo-Parks*, 384 F. Supp. 2d at 820-21, and noting that "[t]his Court has previously concluded that the [Maryland statute] 'has substantive aspects' which must be honored by federal courts").  In *Mayo-Parks*, this Court concluded that the Government could not contest liability in an FTCA medical malpractice wrongful death and survival action after it failed to file a defendant's certificate and report of a qualified expert, as required by the Maryland statute.  *Mayo-Parks*, 384 F. Supp. 2d 818, 820-21.  The Court concluded that these statutory provisions were substantive, not procedural.  *Id*.

[20] In *Willever v. United States*, the Court deemed as dictum *Mayo-Park*'s conclusion that the Government "is precluded from contesting liability in an FTCA action" when it fails to file "a defendant's certificate of a qualified expert and accompanying report," as required by the Maryland statute.  *Willever*, 775 F. Supp. 2d 771, 778.  The Court in *Willever* noted that the Government had not contested liability in *Mayo-Parks*, nor had the Court in that case explained which parts of the Maryland statute were substantive and had to be honored by federal courts.  *Id*. at 786.

this Court."[21]   Thus, the Government's citation to *Mayo-Parks*

does not undermine the validity of *Mizrach I*.   Second, *Zander's*

reasoning about Maryland's statute of repose, *see supra* Part

II.B.1, is inapposite; the Court's decision in *Mizrach I* did not

rely on Maryland's statute of repose, but rather, Mizrach's

failure to exhaust his remedies under the Health Care

Malpractice Claims Act.[22]   Accordingly, Mizrach has pointed to no

change in law that requires this Court to alter its judgment.

III. Conclusion

For the reasons stated above, the Court will deny Mizrach's

motion to alter the judgment.

7/9/12
_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[21] *See Willever*, 775 F. Supp. 2d at 777-78.   Many other cases
have held the same.   *See, e.g.*, *Wilson v. Gottlieb*, 821 F. Supp.
2d 778, 791 n.18 (D. Md. 2011); *Hampel v. United States*, 706 F.
Supp. 2d 629, 631 (D. Md. 2010); *Anderson v. United States*, Case
No. CCB-08-3, 2008 WL 3307137, at *3 (D. Md. Aug. 8, 2008).

[22] *See Mizrach I*, ECF No. 20 (memorandum to counsel explaining
that "the doctrine of exhaustion of remedies applies in this
case and that plaintiff's failure to comply with the Maryland
Health Care Malpractice Claims Act . . . bars this action").